**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

IN RE:                                                      CHAPTER 13
KRISTY LANE CARTER                                          Case No. 11-53017

DEBTOR(S)

**BRIEF IN OPPOSITION TO THE CHAPTER 13 TRUSTEE'S MOTION TO**
**COVERT AND TURN OVER PROCEEDS**

WITNESS LIST

Kristy Carter, Chapter 13 Debtor

Christine Carter, Counsel for Chapter 13 Debtor Kristy Carter

Bradley Koeppen, Counsel for Kristy Carter relating to the April 23, 2010

BRIEF

Comes the Debtor, Kristy Carter, by counsel, and for her brief in opposition to the

Chapter 13 Trustee's motion to dismiss states as follows:

1.  On April 23, 2010 Kristy Carter was in an automobile accident (hereinafter

    "Accident").  While driving her vehicle on the interstate, a semi-tractor trailer

    came into her lane, forcing her to swerve to avoid a collision.  Unfortunately

    the maneuver caused her vehicle to continue into the median where she lost

    control of the vehicle.  The vehicle impacted the guard rail and sustained

    major damage.

2.  Kristy was taken to the hospital by ambulance and released that day.

    Subsequently her injuries were treated by approximately two weeks of

physical therapy.  The vehicle was not as fortunate as it was deemed a total

loss by her insurance carrier.

3.  Kristy did not consider pursuing the at fault driver at first because her

insurance company paid the vehicle loss claim.  Once she began receiving

medical bills, a bill from the Indiana Department of Transportation and a four

fold increase in her automobile insurance did she contact counsel to pursue

her potential claim.

4.  In May of 2010, Ms. Carter contacted attorney Bradley Koeppen for the

purpose of representation related to the damages sustained in the Accident.

5.  It was not until Ms. Carter's former spouse defaulted on the terms of their

divorce decree, by failing to refinance their former marital residence in order

to remove Ms. Carter's liability on the mortgage loan obligation, did Ms.

Carter decide to file for bankruptcy relief.

6.  On October 30, 2011 Ms. Carter filed the above styled Chapter 13 proceeding.

Ms. Carter's Chapter 13 plan proposed to pay $523 per month for five years.

After administrative expenses, all of the proceeds paid into the plan will go to

the unsecured creditors.  The Court entered the order confirming the plan on

December 21, 2011.

7.  Ms. Carter did not list any potential claim related to the Accident on Schedule

B nor did she list any losses from casualty on the Statement of Financial

Affairs in her October 30, 2011 filing.

8.  Likewise at her 341 meeting of creditors, Ms. Carter did not answer

affirmatively when asked if she was suing anyone, or thinking about suing

anyone, and whether she believed she had the right to sue anyone.

9.  At the time of retaining Mr. Koeppen Ms. Carter hoped to get her medical

bills and other expenses which resulted from the accident satisfied.

10. After retaining Mr. Koeppen, Ms. Carter would receive periodic updates,

however there were no offers of settlement from the insurance carrier.

11. In April of 2012, Mr. Koeppen contacted Ms. Carter to explain that further

steps needed to be taken, to pursue her claim.  Ms. Carter then consented to

the filing of the complaint for damages sustained in the Accident.

12. At the end of August 2012, Mr. Koeppen contacted Ms. Carter to advise of a

settlement offer from the insurance carrier.

13. Ms. Carter immediately advised Mr. Koeppen that she was in bankruptcy and

that she could not take any action without consulting with her bankruptcy

attorney.  Ms. Carter directed Mr. Koeppen to contact her bankruptcy counsel,

Christine Carter to advise her of the situation and to obtain instructions on

how to proceed.

14. In response Mr. Koeppen contacted Ms. Carter via telephone and apprised her

of the situation.  Ms. Carter then requested that Mr. Koeppen contact the

Chapter 13 Trustee to advise that the Ms. Carter had a personal injury claim

and request instructions on how to proceed.

15. Subsequently, Mr. Koeppen contacted the Hon. Donald Smith, attorney for the

Chapter 13 Trustee, Beverly Burden and advised Mr. Smith of the personal

injury claim and the pending settlement offer.

16. On October 10, 2012, the debtor filed an amendment to Schedule B adding

"Proceeds from personal injury claim" valued at $22,842.52 at item 35.

17. On October 10, 2012, the debtor filed an amendment to Schedule C exempting

the full value of the proceeds from the settlement of the personal injury

matter.

18. The trustee objected to the debtor's claimed exemptions and after discussion with her attorney Ms. Carter withdrew her claim of exemption in the personal injury settlement proceeds.

19. On December 21, 2012, the bankruptcy court entered an order approving the settlement of the debtor's personal injury matter.

20. In March 2013, the Chapter 13 Trustee received all of the net settlement proceeds in the amount of $20,121.40.

## APPLICABLE LAW

The Chapter 13 Trustee now moves the Court pursuant to 11 U.S.C. §1307(c)(1) and (5) for an order converting this case to one under Chapter 7.

Under § 1307(c) of the Bankruptcy Code, the Court may dismiss or convert a debtor's Chapter 13 bankruptcy case "for cause." It provides:

> (c) Except as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> ….
>
> (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;

The filing of a bankruptcy case in bad faith also is considered "cause" to dismiss a case under § 1307(c). *Alt v. United States* (*In re Alt* ), 305 F.3d 413, 418–19 (6th Cir.2002)("[T]here is abundant authority for the notion that a bankruptcy court has the power to dismiss a Chapter 13 petition upon a finding that the debtor did not bring it in

good faith.").

The Sixth Circuit has "announced standards for bankruptcy courts to follow in determining the debtor's good faith." *Alt,* 305 F.3d at 419 (italics omitted). A determination of "good faith is a fact-specific and flexible determination" which "requires consideration of the totality of circumstances." *Copper v. Copper* (*In re Copper*), 426 F.3d 810, 815 (6th Cir.2005) (citations omitted). "Under the totality of the circumstances test, [courts] analyze both the prior conduct of the bankruptcy petitioner and the petitioner's present circumstances." *Society Nat'l Bank v. Barrett* (*In re Barrett* ), 964 F.2d 588, 590 (6th Cir.1992).

The Sixth Circuit listed twelve "circumstances to be considered in determining whether a plan has been proposed in good faith":   (1) the debtor's income; (2) the debtor's living expenses; (3) the debtor's attorney's fees; (4) the expected duration of the Chapter 13 plan; (5) the sincerity with which the debtor has petitioned for relief under Chapter 13; (6) the debtor's potential for future earning; (7) any special circumstances, such as unusually high medical expenses; (8) the frequency with which the debtor has sought relief before in bankruptcy; (9) the circumstances under which the debt was incurred; (10) the amount of payment offered by debtor as indicative of the debtor's sincerity to repay the debt; (11) the burden which administration would place on the trustee; **(12)the statutorily-mandated policy that bankruptcy provisions be construed liberally in favor of the debtor**. [emphasis added]  *Alt,* 305 F.3d at 419 (citing *Society Nat'l Bank v. Barrett* (*In re Barrett* ), 964 F.2d 588, 592 (6th Cir.1992).  These factors are a starting point, and a court should consider the particular facts and circumstances present in an individual case when making a good faith determination.  *Alt,* 305 F.3d at

419.

In the case here, the basic facts are not in dispute.  That is on the petition date, the

Debtor possessed a potential claim for damages she sustained in the Accident.   The

Debtor failed to disclose the claim in the initial filings on Schedule B or on SOFA.  Nor

did the Debtor disclose the potential claim at the meeting of creditors.

However, the Debtor did, on her own volition, disclose the claim and upon

learning from her counsel of the pending settlement offer.  In fact upon learning of the

settlement offer, the Debtor took immediate steps toward disclosure.

Debtors have a right to amend their Schedules under F.R.B.P. 1009(a), and

amendment is liberally allowed as a matter of course at any time before a case is closed

under Rule 1009(a). *Martinson v. Michael (In re Michael),* 163 F.3d 526, 17 Mont. B.R.

192, 198 (9th Cir.1998) (citing cases). However, amendment may be denied on a

showing of a debtor's bad faith. *Id.*  Nevertheless, the statutorily-mandated policy is that

bankruptcy provisions be construed liberally in favor of the debtor. *Alt,* 305 F.3d at 419

(citing *Society Nat'l Bank v. Barrett (In re Barrett* ), 964 F.2d 588, 592 (6th Cir.1992).

The Trustee relies on *Marrama v. Citizens Bank of Massachusetts*, 127 S. Ct.

1105 (2007) for its discussion of bad faith conduct in Chapter 13 cases where a Chapter

13 Debtor fraudulently conceals significant assets.  *Id*. at 127 S. Ct. 1105.  However,

"[t]he majority in the *Marrama* decision did not address whether subsequent disclosure

and an improved chapter 13 plan can cure prior bad faith conduct, such as a failure to

disclose a material asset. *See Marrama,* 549 U.S. at 381 (J. Alito *dissenting* ) (noting that

these issues were rendered academic by the majority's decision)." *In re Loper*, 2009 WL

9084933 at 3.

The testimony of the Debtor, Debtor's bankruptcy counsel and personal injury counsel will all support the Debtors contention that she did not act in bad faith and that the failure to initially disclose the potential claim was from a flawed understanding of the nature of her claim and not an intent to conceal.  It is the Debtor's disclosure of the asset which is critical here, as it objectively demonstrates her good faith in preparing the schedules despite her failure to initially disclose the potential claim.  When a debtor comes forward on her own accord with information that was previously omitted, there is a strong inference that there was no fraudulent intent in the omission. *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1295 (10th Cir. 1997)[1].

Courts have further noted the significant difference between subsequent disclosure of an asset after discovery of the asset by a party-in-interest as opposed to the Debtor, as is the case here.  In *In re Watkins*, 474 B.R. 625 (2012) the Court discusses the balance the court must strike between a voluntary disclosure of an asset upon realizing the omission and the disclosure after being "found out."  *Id.* at 651.

> In this context, the court is fully aware of reported decisions that state that an initial failing in disclosure cannot be subsequently corrected by amending schedules or by subsequent disclosure. If one analyzes a number of these cases closely, one will discover that the disclosures made by debtors to which these "homilies of law" are directed occurred only after the debtor had been found out, and involved significant assets or significant circumstances bearing on the administration of a bankruptcy estate for the benefit of creditors. As stated, in cases like this, the court must be very careful to balance its determination of denial of discharge in light of policies which either enhance, or detract from, administration of future cases. In this context, on the one hand is the policy of sending a message to debtors that full initial disclosure is required, and that there are consequences for not doing so. On the countervailing hand is the policy of encouraging debtors to ultimately fully disclose matters to trustees and the

---

1. Discussing the debtors lack of bad faith demonstrated by subsequent disclosure after initial failure disclose an asset in the context of §727(a)(4).

court, even in a circumstance in which initial disclosures may
have been found wanting. If one adopts a harsh and restrictive
approach to failures to disclose matters in initial bankruptcy
filings—particularly Schedules, the Statement of Financial
Affairs, and the Form B22A—and has a willingness to loosely
interpret the "knowingly and fraudulently" requirement of §
727(a)(4), then what recourse does a court leave to a debtor to
subsequently disclose anything? The answer is very little. If in the
alternative, the court adopts a policy which views the "knowingly
and fraudulently" requirement more pragmatically, then debtors
are left with some incentive to *ex post facto* validly participate in
the administration of their cases. The court adopts the latter
policy. There are indeed cases in which initial bankruptcy filings
evidence violations of § 727(a)(4), and no matter what a debtor
may subsequently do, the initial "bad act" cannot be undone. This
isn't one of those cases.

*Id.*

One can understand the Trustee's desire to have a purely mechanical test to

determine bad faith.  The Trustee, in large part, relies on Debtors to accurately and

honestly complete the bankruptcy schedules to permit the Trustee to efficiently

administer the many cases for which she is responsible.  However, the question of lack of

good faith cannot be determined like an incorrect answer on a multiple-choice

examination.  In considering whether Debtors have pursued actions in this case that

warrant dismissal for lack of good faith or for bad faith, the Court must review the

"totality of the circumstances". *Leavitt v. Soto (In re Leavitt),* 171 F.3d 1219, 1224–25

(9th Cir.1999); see also *In re Werts*, 410 B.R. 677 (2009) *Werts* 410 B.R. 677 (2009)

(Based on the totality of the circumstances, the Court found that the Chapter 13 was not

filed in bad faith, despite the rather extensive errors and omissions contained in the

schedules and SOFA, and that it should therefore not be dismissed on that basis).

In the case here, the only testimony the Court will have to consider is that of the

Debtor and the experienced attorneys who had the opportunity to observe the Debtor

during this period.  Mr. Koeppen testifies that Ms. Carter immediately advised him of her

bankruptcy and asked him to contact her bankruptcy counsel to advise her of the

settlement because she was not sure how to proceed.  Mr. Koeppen, who is a practicing

attorney of 29 years experience, noted that he has had an opportunity to form an opinion

as to the honesty of Ms. Carter, which is that she is in fact honest.  He also noted that she

immediately advised him of her bankruptcy upon learning that there would be proceeds

after her medical claims where paid.  Mr. Koeppen noted that in his opinion, had she

intended to conceal the claim, she would not have advised him of the bankruptcy

proceeding nor would she have instructed him to contact her bankruptcy counsel.

The Debtor's bankruptcy attorney Christine Carter, likewise testifies that she had

the opportunity, during the course of her dealing with the Debtor to form an opinion that

the Debtor was honest and did not intentionally fail to disclose the asset.  Attorney Carter

notes that the Debtor immediately, upon learning that there were cash proceeds, took

steps to disclose the claim, and in fact amended her schedules to disclose the asset.

Likewise, Attorney Carter notes that the Debtor voluntarily disclosed the asset.

The disclosure did not occur after "the debtor had been found out" but was driven by the

Debtor's attempt at full disclosure.  *Watkins*, 474 B.R. 625 at 651(2012).

Finally as Kristy Carter, explains in her affidavit, that in her admittedly flawed

view, she believed the claim for damages from the Accident was to pay the medical

expenses incurred as a result of the accident.  At the time of retaining Mr. Koeppen, she

did not believe she would recover any sums above the incurred debts.  While the Trustee

is likely to scoff at what may be a naïve explanation, the veracity of Kristy's explanation

is borne out by her actions in immediately disclosing the asset upon learning that there

would be proceeds available after the expenses were paid.  This explanation is further

supported by the testimony of two seasoned attorneys who were in the best position to

form an opinion as to the circumstances which led to the initial omission and subsequent

disclosure.

**Conversion is to Chapter 7 is not in the Best Interest of Unsecured Creditors.**

Finally, conversion is not in the best interest of creditors.  At plan confirmation,

the Trustee estimated that there would be a 29% dividend to unsecured creditors, in that

the Debtor's plan calls for total payments of $31,380 over the life of the plan.  Through

June 2013, the Debtor's plan has 40 months remaining in her plan.  Thus the Debtor will

pay an additional $20,920 over the remaining term of the plan.  Combined with the

payments to date and the Accident proceeds paid to the Trustee, there will be $51,001.40

less administrative expenses to distribute to creditors.  Should the Trustee's motion be

sustained the distribution to unsecured creditors will be cut by more than 40%[2].  Clearly

a 40% cut in the dividend to unsecured creditors is not in their best interest.

**The Evidence Does Not Support Conversion Pursuant to §1307(C)(1) and (5)**

As noted above, the Chapter 13 Trustee makes her motion to convert to Chapter 7

pursuant to 11 U.S.C. §1307(c)(1) and (5).  Under § 1307(c) of the Bankruptcy Code, the

Court may dismiss or convert a debtor's Chapter 13 bankruptcy case "for cause." It

provides:

(c) Except as provided in subsection (f) of this section, on request of a party

---

[2] This estimate does not take into account the additional administrative expense of a Chapter 7 Trustee's commission on the distribution of $19,621.40 which would likely exceed $5,000.

in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

….

(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;

Neither provision of §1307 have any support from the facts of this case. With respect to §1307(1), unreasonable delay by the debtor that is prejudicial to creditors, there is no evidence in the record, that the late disclosure of the personal injury claim had the effect of any delay on creditors. The evidence is clear that immediately upon learning that the claim would result in excess funds, the Debtor took affirmative steps to disclose the asset. Further the Debtor withdrew her claim of exemption, in an effort to show proper contrition for the failure to initially disclose. In the event the Debtor had continued to assert her exemption claim then the result would have either been a delay or if successful, the proceeds would not have been available to creditors, as the Debtor has sufficient exemptions to protect all of the proceeds.

The Trustee's motion to convert pursuant to §1307(5) (5) "denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan" simply has no relevance in the case here. The Debtor has not made any request for additional time to file another plan or a modification.

**Withdrawal of Claimed Exemption Demonstrates Appropriate Contrition**

In the Trustee's motion, she argues that "if the case is not dismissed or converted, there will be no consequence or penalty to the debtor for her willful and ongoing failure to disclose the claim."[3] [Doc. 36] Trustee's Motion to Convert pg. 3.  This claim surely ignores the fact that the Debtor withdrew her claim to fully exempt the proceeds. Without question, the loss of almost $20,000 of what otherwise would have been exempt proceeds is indeed a severe consequence.  This argument of the is not supported by the evidence in the record.

## CONCLUSION

It is the Trustee's burden to demonstrate the Debtor's lack of good faith.   The Trustee only offers the Debtor's initial schedules and 341 testimony to support her motion. The Trustee's motion places no value on the fact that the Debtor, without prodding took immediate steps to disclose the claim once she realized it had value.  The Trustee finds no punitive value from the Debtor losing any claim of exemption in the settlement proceeds.  While the Trustee finds no value in the Debtor's disclosure, this Court must consider the Debtor's voluntary disclosure along with all of the witness testimony to consider the totality of the circumstance which led the Debtor to this point. The Debtor has explained her actions and her testimony is consistent and is supported by the opinions and testimony of her experienced attorneys.

WHEREFORE, based on the foregoing, the Debtor requests the Court OVERRULE the Chapter 13 Trustee's motion to convert her case to Chapter 7.

---

[3] According to representations made by the Chapter 13 Trustee at the April 4, 2013 hearing, the US Trustee has made a criminal referral to the United States Attorney.

Respectfully submitted,


/s/ Ryan R. Atkinson.
ATKINSON, SIMMS
& KERMODE, PLLC
1608 Harrodsburg Road
Lexington, KY  40504
KY Bar Id: 86501
Telephone:  (859) 225-0-1745
Facsimile:   (859) 254-2012
rra@ask-law.com
COUNSEL FOR DEBTOR




## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was served electronically by the

Court's ECF System, on June 10, 2013 on the foregoing:




/s/ Ryan R. Atkinson
COUNSEL FOR DEBTOR