**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

IN RE:

**KRISTY LAINE CARTER**                                                    **CASE NO. 11-53017**

**DEBTOR**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the chapter 13 Trustee's Motion to Convert and Turn Over Proceeds [Doc. 36] pursuant to 11 U.S.C. §1307 (the "Motion"), as supplemented by the Supplement to Clarify Motion to Convert and Turn Over Proceeds [Doc. 68] (the "Supplement"), and the Debtor's Objection [Doc. 42]. An evidentiary hearing was held on July 30, 2013, and the matter is now submitted for a decision. The Court having considered the testimony, exhibits, stipulations, briefs, arguments of counsel, and the record, finds that the Trustee has failed to meet her burden to show sufficient cause exists to convert the Debtor's chapter 13 bankruptcy case to a chapter 7 case and the Trustee's Motion is denied.

**I.     FACTS**

On April 23, 2010, the Debtor was involved in a motor vehicle accident. On May 3, 2010, the Debtor signed an Agreement to Provide Legal Services ("Retainer Agreement") with the law firm of Douglas, Koeppen & Hurly (the "Law Firm"). The Retainer Agreement provides "that the Law Firm will represent [Debtor] in the following matter:  Personal Injury matter beginning on or about April 23, 2010" (the "Personal-Injury Claim"). The Retainer Agreement limits the representation to settlement negotiations and indicates that "[i]f such negotiations do not resolve the matter then [Debtor] and the Law Firm will reevaluate additional courses of action …."

The Debtor filed for chapter 13 relief on October 30, 2011. The Debtor did not disclose the Personal-Injury Claim on her Schedules or her Statement of Financial Affairs ("SOFA"), except for listing a medical debt owed as a result of a "car accident" on Schedule F.

On December 2, 2011, the Debtor testified at the first meeting of creditors that she was not suing anyone, thinking about suing anyone, and did not believe she had the right to sue anyone. She further testified that she did not anticipate receiving any money from a lawsuit, settlement, award, or any other source.

The Debtor's chapter 13 plan, proposing to pay a 29% divided to the Debtor's general unsecured creditors, was confirmed on December 21, 2011. *See* Doc. 15.

On April 20, 2012, the Law Firm filed a complaint on the Debtor's behalf seeking damages for her Personal-Injury Claim. On August 29, 2012, the Law Firm negotiated an offer of settlement of the Personal-Injury Claim of $45,000.00 for "full & final settlement of any and all claims" related to the accident. *See* Doc. 57-7, Check No. 3665175 issued on August 29, 2012, by Great West Casualty Company.

On August 30, 2012, Bradley Koeppen, of the Law Firm, contacted the Debtor to inform her about the proposed settlement. The Debtor advised Koeppen that she had filed bankruptcy and asked him to contact her bankruptcy attorney, Chris Carter. Koeppen contacted Carter in early September, and she in turn advised him to contact the Chapter 13 Trustee. On September 19, 2013, Koeppen contacted the Trustee about the Debtor's Personal-Injury Claim and the pending settlement offer.

On October 10, 2012, the Debtor filed an amendment to Schedule B to include the proceeds from the settlement of her Personal-Injury Claim in the amount of $22,842.52. [Doc. 26]. The Debtor further amended Schedule C to exempt the full value of the proceeds. [Doc. 26].

The Trustee objected to the claimed exemption [Doc. 28] and the Debtor voluntarily withdrew the amendment to Schedule C [Doc. 29].

On December 21, 2012, the Court approved the settlement of the Debtor's Personal-Injury Claim.[1] *See* Doc. 35 (related Doc. 32, Ex. B). Thereafter, the Trustee filed the Motion seeking conversion to chapter 7. After the Debtor's Objection, the Court set the matter for hearing.

At the Court's direction, the parties prepared Joint Stipulations of Facts and Exhibits for Evidentiary Hearing Scheduled for June 27, 2013. *See* Doc. 57. The joint stipulations are adopted in their entirety.

The Court conducted an evidentiary hearing on July 30, 2013, during which Rachelle Dodson of the U.S. Trustee's office testified by affidavit on behalf of the Trustee. The Debtor, Koeppen, and Carter testified on the Debtor's behalf by affidavit. At the hearing, Dodson, the Debtor, and Carter were subjected to cross-examination by opposing counsel. The affidavits and exhibits were admitted without objection.

## II.   DISCUSSION

The issue before the Court is whether there is sufficient cause to convert the Debtor's chapter 13 case to a chapter 7 case pursuant to 11 U.S.C. § 1307(c). The parties agree on the relevant facts but dispute the inferences the Court should draw from those facts. The Trustee argues the Debtor's failure to disclose her Personal-Injury Claim is evidence of bad faith that requires conversion of her chapter 13 case to one under chapter 7 so the United States Trustee

---

[1] The settlement proposal issued and approved by the Court was for a total of $45,000.00, which was distributed as follows: (1) $15,000.00 to Douglas, Koeppen & Hurley for attorneys' fees; (2) $631.02 to Douglas, Koeppen & Hurley for expenses; (3) $10,000.00 to Indiana Insurance/Liberty Mutual is settlement of a subrogation lien, less $3,333.33 in attorneys' fees and $104.21 in a pro rata share of litigation expenses for a total of $6,526.46; and (4) $3,221.12 for medical expenses. After distribution, the Debtor's share of the settlement totaled $19, 621.40.

may seek to deny her discharge pursuant to 11 U.S.C. § 727. The Debtor argues that she did not act in bad faith and failed to disclose her Personal-Injury Claim because of a misunderstanding about the process of pursuing the Personal-Injury Claim and her belief that she would not recover any proceeds beyond those necessary to pay the bills incurred as a result of the accident.

> A. **The Court Must Consider the "Totality of the Circumstances" in Determining Whether a Chapter 13 Petition Was Filed in Bad Faith.**

Pursuant to 11 U.S.C. § 1307(c):

> Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause…

11 U.S.C. § 1307(c). The Trustee initially pointed to §§ 1307(c)(1) and (5) as grounds for conversion, but the Supplement indicated the Trustee was merely making an argument of conversion "for cause" without reference to any of the examples in §§ 1307(c)(1)-(11).

The Motion instead argues the Debtor acted in bad faith, which is a basis for dismissal for cause under § 1307(c). *See In re Alt*, 305 F.3d 413, 420 (6th Cir. 2002) (recognizing that there is abundant authority to support a bankruptcy court's dismissal of a chapter 13 petition upon a finding that a debtor acted in bad faith); *see also Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 127 S.Ct. 1105 (2007) ("despite the absence of any statutory provision specifically addressing the issue, the federal courts are virtually unanimous that prepetition bad-faith conduct may cause a forfeiture of any right to proceed with a Chapter 13 case."); *cf.* 11 U.S.C.

§ 1325(a)(7) (imposing as a condition to confirmation of a chapter 13 plan that the petition was filed in good faith).[2]

The issue before the Sixth Circuit in *Alt* was whether the bankruptcy court appropriately dismissed the debtor's chapter 13 petition for bad faith. According to the Court, the "key inquiry in such cases is whether the debtor is seeking to abuse the bankruptcy process." *Alt*, 305 F.3d at 419. The Sixth Circuit held that a bankruptcy court must consider "the totality of the circumstances" in deciding whether a debtor filed a chapter 13 petition in good faith. *See id.* The Court noted "good faith is a fact-specific and flexible determination." *Id.* (citing *Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030, 1032-33 (6th Cir. 1988)).

The Court next elaborated on the factors relevant to evaluating claims regarding a debtor's lack of good faith. *Id.* at 419-20. Borrowing from its test for whether a chapter 13 plan was proposed in good faith as required by § 1325(a)(3), the Sixth Circuit discussed a list of non-exhaustive factors courts may consider when determining whether a petition was filed in good faith.[3] *Id.* at 419 (citing *Society Nat'l Bank v. Barrett (In re Barrett)*, 964 F.2d 588, 592 (6th Cir. 1992)). In addition to its own good-faith analysis, the *Alt* Court incorporated the totality of the circumstances test adopted by the Seventh Circuit in *In re Love*, 957 F.2d 1350 (7th Cir. 1992). *Alt*, 305 F.3d at 419. As the *Alt* Court noted, and according to *Love*, a factor considered in

---

[2] The *Alt* case was decided prior to the adoption of § 1325(a)(7). At the time of the *Alt* decision, the remedy to deal with bad-faith conduct in the filing of a chapter 13 petition was conversion or dismissal of the case under § 1307.

[3] These factors include, but are not limited to: (1) The debtor's income; (2) the debtor's living expenses; (3) the debtor's attorney's fees; (4) the expected duration of the chapter 13 plan; (5) the sincerity with which the debtor has petitioned for relief under chapter 13; (6) the debtor's potential for future earning; (7) any special circumstances, such as unusually high medical expenses; (8) the frequency with which the debtor has sought relief before in bankruptcy; (9) the circumstances under which the debt was incurred; (10) the amount of payment offered by debtor as indicative of the debtor's sincerity to repay the debt; (11) the burden which administration would place on the trustee; and (12) the statutorily-mandated policy that bankruptcy provisions be construed liberally.

assessing a debtor's good faith is "whether the debtor has been forthcoming with the bankruptcy court and the creditors." *Id.* (internal citation omitted).

The Court in *Alt* also determined that the burden of showing cause for conversion or dismissal belongs to the party seeking relief, in this case, the Trustee. *Id.* at 420.

> **B.** **The Totality of the Circumstances Does Not Support Conversion to Chapter 7.**

Based on the totality of the circumstances and considering the factors discussed in *Alt*, the Trustee has not introduced sufficient evidence of bad faith to warrant conversion of this case for cause under § 1307(c). The Trustee focuses on the Debtor's admitted failure to disclose the Personal-Injury Claim on her Schedules and SOFA, and at the first meeting of creditors. Non-disclosure in bankruptcy is a serious offense that this Court does not take lightly. *See, e.g., In re Lindley*, 121 B.R. 81, 90 (Bankr. N.D.Okla. 1990) ("A debtor has a paramount duty to consider all questions posed on a statement or schedule carefully and see that the question is answered completely in all respects.") (internal citation omitted).

The Debtor's failure to include the Personal-Injury Claim on her Schedules or SOFA is a concern, as is her failure to disclose the claim when questioned at the first meeting of creditors. But the evidence produced by the Debtor, including her explanation of her understanding regarding the nature of the undisclosed claim and her actions upon learning of the offer of settlement, convince the Court that this case involves inadvertent non-disclosure that does not amount to a lack of good faith.

      **1.  The Schedules, SOFA, and Testimony at the § 341 Meeting.**

  The Debtor admits she failed to disclose the Personal-Injury Claim in the Schedules and SOFA. The Debtor also did not disclose the Personal-Injury Claim when asked specific questions at the first meeting of creditors.

  The Debtor's negative answers to questions on lawsuits and settlement during the § 341 meeting that clearly should have evoked positive answers are particularly troubling. The debtor answered "no" to the question: "Are you suing anyone, thinking of suing anyone, or believe you have the right to sue anyone?" *See* Doc. 57-3, Agreed Transcription of Audio File, Ex. 4, p. 2. It is possible to justify a negative answer because the Retainer Agreement indicated the Law Firm would initially only conduct settlement negotiations and the complaint was not filed until after the § 341 meeting. It is harder to understand or justify why the Debtor then answered "no" to a follow-up question: "Do you anticipate receiving any money or property in the next six months from … [l]awsuit, settlement or award?"

  Standing alone, these facts could justify finding the Debtor was intentionally deceptive. But the totality-of-the-circumstances test requires the Court to consider all relevant evidence, including the Debtor's explanations for her repeated non-disclosures. Though it is a close question, the unique circumstances of this case allow a conclusion that these exclusions were not the result of bad faith.

      **2.  The Debtor's State of Mind and the Time Lapse Between the Accident and the Bankruptcy.**

  The Debtor testified that she did not believe when she filed her petition that she had a claim requiring disclosure in the Schedules or SOFA. At the time the Debtor filed her petition, over eighteen months had passed since she was injured in the accident and retained counsel to

settle her Personal-Injury Claim. The record indicates there was no material movement in the matter during that time and the Debtor heard little from her attorney. Moreover, because no lawsuit was filed, there was technically no suit to disclose in the SOFA.

Further, the Debtor testified her injuries were not significant, so she did not believe she would receive any money from the claim. *See* Doc. 59 at ¶ 21. The Debtor testified that her reason for retaining counsel was to recover the expenses incurred from the accident that were paid by her insurance company and to reduce a four-fold increase in insurance premiums charged after the accident. *Id.* at ¶ 6,7, and 13 (at the hearing the Debtor indicated it was a three-fold increase, which is still significant). The Debtor believed, albeit incorrectly, that her Personal-Injury Claim, if resolved in her favor, would result in payment of only her expenses as a result of the accident and she would not receive any funds as a result.

The Debtor's testimony on cross examination at the July 30 hearing, were consistent with her direct testimony. The Debtor's responses also demonstrated her unfamiliarity with the specialized meaning of legal terms used in both the bankruptcy and personal-injury matters. The Debtor's lack of sophistication with respect to the relevant legal issues supports her explanations regarding her non-disclosure of the Personal-Injury Claim.

Having considered the Debtor's testimony, the Court accepts that the Debtor's memory was not focused on the accident and the Personal-Injury Claim on the Petition Date or at the § 341 meeting. Accepting the Debtor's explanations on these facts does not advocate non-disclosure based on technicalities in the interpretation of the requirements on the petition and schedules. A policy of over-disclosure versus non-disclosure is a better approach in these circumstances. But based on the credibility of the Debtor and the lack of any evidence to the

contrary, the Debtor's explanation for her failure to disclose her Personal-Injury Claim is plausible.

### 3. The Debtor's Post-Disclosure Actions.

The most compelling evidence the Debtor's did not act in bad faith is her role in bringing the existence of the settlement proceeds to the attention of the chapter 13 Trustee and the Court. The Trustee asserted that "it was never the debtor who advised either the trustee or her bankruptcy counsel of the claim; it was instead her personal injury attorney." *See* Doc. 65 at p. 11. This statement ignores the fact that Koeppen contacted Debtor's counsel and the Chapter 13 Trustee at the direction of the Debtor.

In cases of undisclosed assets, a court is more likely to find fault if the hidden asset is discovered through the efforts of a third-party as opposed to a voluntary disclosure by a debtor. *See In re Watkins*, 474 B.R. 625, 651 (Bankr. N.D. Ind. 2012) (contrasting more favorable treatment of debtors making voluntary disclosures of previously non-disclosed assets with debtors making disclosure after being "found out" in a denial-of-discharge case under § 727(a)(4)); *see also In re Miller*, 448 BR 551, 569 (Bankr. N.D. Okla 2011) (Debtor's voluntary disclosure may prove absence of intent necessary to sustain a discharge action under § 727(a)(4)).

The bankruptcy court in *In re Babb*, 358 B.R. 343 (Bankr. E.D. Tenn. 2006), explained:

> [S]ince interested parties should not be required to drag the truth from the debtor, a showing of good faith in a § 727(a)(4)(A) matter will often come down to whether a debtor has abided by this cardinal rule: when in doubt, disclose. For example, a debtor is likely to be forgiven for simply mislabeling an asset, where its existence is still initially disclosed. However, where a debtor only voluntarily discloses information after its existence is uncovered by a third-party (e.g., a trustee or creditor), good faith is unlikely to be found.

358 B.R. at 356 (citing *United States Tr. v. Halishak (In re Halishak),* 337 B.R. 620, 630 (Bankr. N.D.Ohio 2005) (internal citations omitted)).

The Debtor's voluntary disclosure of her Personal-Injury Claim in this case is similarly relevant to the good-faith inquiry. There is no evidence the Debtor made any attempt to conceal the offer of settlement or even delay revealing the information to the Trustee in an effort to determine an appropriate way to address her non-disclosure and mitigate any damage it may have caused.

The Debtor's claims of honesty and lack of intent, which were supported by the testimony of Debtor's bankruptcy and litigation attorneys, are bolstered by the fact she did not attempt to hide the existence of the settlement when it was brought to her attention by the Law Firm. The Debtor did amend Schedule B to disclose the settlement proceeds and attempt to exempt some of the proceeds via an amendment to Schedule C, but the Court does not infer dishonesty from an attempt to take a potentially legitimate exemption. Regardless, the Debtor later withdrew the exemption request in an attempt to placate the Chapter 13 Trustee. *See infra* Section II.C.

Ultimately, the Debtor's actions are evidence under these circumstances of an intent to disclose an asset that was initially omitted and those actions weigh in favor of her credibility.

    **C.**    **The Best Interests of the Creditors.**

The parties spent a substantial portion of the evidentiary hearing addressing whether conversion of the Debtor's case was in the best interests of the creditors and the estate. Section 1307(c) allows the Court to convert or dismiss a case, "whichever is in the best interests of the creditors or the estate, for cause …." 11 U.S.C. § 1307(c). This at least suggests the Court could deny a dismissal or conversion that is not in the best interest of a debtor's estate.

The Court's conclusion that the Trustee has not proven bad faith to justify conversion based on the totality of the circumstances avoids the need to address a best-interests test. It is worth noting, however, that the Debtor gave up a possibly valid exemption in the settlement proceeds. As a result, the net proceeds are now property of the estate and thus will enhance distributions to creditors pursuant to the chapter 13 plan. The Debtor's failure to disclose is not without consequences and those consequences inure to the creditors' benefit.

### III. CONCLUSION

The Trustee has not met her burden to show that based on the totality of the circumstances, the Debtor acted in bad faith. Based on the foregoing, it is ORDERED that the Trustee's Motion to Convert and Turn Over Proceeds is DENIED.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Wednesday, August 07, 2013
(grs)**